HawkiNS, J.,
delivered the opinion of the Court.
The material facts, as presented by this record, are substantially as follows: Abraham Overall died in 1843, after having made and published his last Will and testament, which was afterwards admitted to probate as to personalty, but not as to real estate.
*535 The Will contains the following clause, to-wit: “I give and bequeath to the separate use of my daughter, Nancy C. Sneed, one-seventh part of all my real and personal property, not otherwise bequeathed by this instrument; which shall not, in any event, be subject to the debts or contracts of her husband, but to be hers during her natural life, and at her death to be equally divided among her children.”
John J. Sneed, Sr., and one H. A. Overall, were appointed and qualified administrators, with the Will annexed, of the estate of said testator, and afterwards filed their petition in the Circuit Court of DeKalb county, praying for a sale of the slaves belonging to said estate. A sale was directed, and accordingly, on the 8 th of January, 1846, said slaves were sold by the Clerk of said Court. At the sale, John J. Sneed, Sr., one of the administrators, and who was also the husband of Nancy C. Sneed, became the purchaser of three of the slaves, to-wit: Caswell, Nelson and Sylvia, at the aggregate price of $1,307.50, for the payment of which he executed and delivered to the Clerk his notes, with security, due at twelve months, to defendants. John J. Sneed, Sr., took said slaves into his possession at the time of his purchase, and has held them until since the filing of the bill in this cause. Nancy C. Sneed died in November, 1848, leaving her said husband, and the following children, surviving her, to-wit: Cynthia, who has intermarried with John W. Botts; Eliza Ann, who has intermarried with William Paty; Harriet, who has intermarried with Yandle Wood; Caroline, Thomas J., Louisa, who has inter *536 married with A. N. Williams; and M. F., who has intermarried with Yancey Lamb; Martha, who has intermarried with one Briggs; (and died, leaving one child, to-wit, Nancy Briggs;) and A. W. H. Sneed; (who has died, leaving issue, to-wit, Horace J.;) and Caroline S. Sneed.
This bill was filed in 1859, by Williams and wife, Lamb and wife, and Botts and wife, against the husband and other children and grand-children of Nancy 0. Sneed, deceased; and alleges, in substance, that said purchase by defendant, John J. Sneed, Sr., was made for the benefit of his wife, Nancy C., and paid for out of the money belonging to her for life, and then to her children, under the Will of her father, Abraham Overall, deceased; and that the money to which she was entitled under that clause of the Will, amounted to $1,437.37; that said slaves having been purchased with the money belonging to the said Nancy C., during her life, and to her children after her death, complainants are entitled to them and their increase, and to an account for hires since the death of the said Nancy C.; and also to an account for the balance of the money, to which the said Nancy 0., was entitled, under said Will, for life, in excess of the price of the slaves. And the prayer of the bill is, that said slaves and their increase, be decreed to the children of the said Nancy C. Sneed, deceased, according to the provision of said Will; that an account of hire be taken, etc., and for such other, further and different relief, as the facts set forth in the bill may justify. Botts and wife having refused further to prose *537 cute the suit, they were made defendants by order of the Court, and required to answer, which they neglected to do.
Williams and wife, by leave of the Court, filed an amended bill, making Overall the co-administrator with Sneed, a party defendant. John J. Sneed, in his answer, denies that the children of Nancy C. Sneed have acquired, under the Will, any right to the bequest, and insists, that, by virtue of his marital rights, he became entitled to the property. And, it is now insisted in argument, that, under the operation of the rule in Shelly’s case, the remainder to the children of Mrs. Sneed, after her death, was inoperative and void, and that Mrs. Sneed took the absolute estate, and that the marital rights of the husband having attached, he is entitled to the bequest, to the exclusion of his wife’s children.
If these propositions can be maintained, the rights of the parties are settled, and, without any further investigation, complainant’s bill must be dismissed. The rule before referred to, and which has been so often stated, is this: “Where any person takes an estate of freehold, legally or equitably under a deed, Will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of an intervening estate, of a right of the same legal or equitable character, to his heir ['or heirs of his body, as a class of persons, to take, in succession, the limitation to the heirs entitles the ancestor to the whole estate;” and in Roper on Legacies, p. 393, it is stated, *538 as a principle of law, that, “ If personal estate be given by testament to A, and the heirs of his body, as such words would create an express estates tail in freehold lands if applied to them, so in personal estate if applied to it ; and such words will have the effect to vest the absolute interest, because such property cannot be entailed ; therefore, the first taker will take the absolute interest in the bequest, and the remainder and executory limitations to the heirs of the body,- will have no effect.” The language of the bequest under consideration, after giving to Mrs. Sneed an absolute and separate estate for life, is, “and at her death to be equally divided among her children;” and the question now presented is this: Is the word “ children,” as used in this clause of the Will, to be construed- as a word of purchase, or of limitation ? If the former, the remainder takes effect; if the latter, it is void, and Mrs. Sneed took the absolute interest.
The word “ children” is strictly a word of purchase, and must be so construed, unless it clearly appears that it was intended to be a word of limitation; and, as a general rule, such intention must be gathered from the instrument itself. There is nothing whatever, in this Will, from which we can draw even an inference that the testator intended the word “ children” to be construed, or to take effect, as a word of limitation; and if we look outside of the instrument, and to the fact that his daughter, Nancy C. Sneed, had several children living at the date of the Will, who are declared to be the objects *539 of Ms bounty, it is very apparent the word was used in its strictly legal sense, and as a word of purchase.
We are, therefore, of the opinion, the bequest does not fall within the extent and operation of the rule in Shelly’s case, or the principle before referred to, as laid down in Roper’s Treatise on the Law of Legacies.
It appears that the note, given by Sneed for the purchase money of the slave, was delivered over by the clerk to the administrators. as so much money, and is still in the hands of defendant Overall, and has never been, in fact, paid. No final settlement has ever been made between Sneed and his co-administrator, of their administration; but it was understood between them that it was to be received by Sneed in payment of so much of the fund of $1,487.37, arising from the sale of slaves, and to which Mrs. Sneed was entitled under the Will of her father; and although it was never in fact delivered up by the clerk to Overall, and retained by him with that understanding; and all parties, we have no doubt, regard the matter as virtually settled in that way; and so we must regard it.
It follows, then, the slaves having been purchased with the funds belonging to Mrs. Sneed’s children at her death, they would be entitled to them with their increase; also to an account for hire from the death of Mrs. Sneed.
This brings us to the consideration of another question, and one which presents the greatest difficulty in the case. It appears, that, after the breaking out of the late civil war, and in 1863, Mrs. Paty, Mrs. Botts, *540 Mrs. Williams and Mrs. Wood, during the absence of their husbands, some of whom were then confined in military prisons, went to the house of the defendant, John J. Sneed, and took the slaves out of his possession by force, alleging in justification for doing so, that their husbands were gone, the slaves belonged to them, and they needed their services to get wood, make fires, etc. Soon thereafter, a compromise was entered into between the father and his daughters, above mentioned, and Caroline Sneed, and which was intended by them as a final settlement of all the matters in controversy between them. By the terms of the compromise the children of ÜSTancy C. Sneed were to have all the slaves in controversy, except the youngest girl, Fanny, which was to be delivered up by them to the father, and be his during his life, and at his death to go to his wife’s children ; the father also agreed to deliver up all the household furniture that came by1 his wife, and was to remain in the peaceable possession of the balance of his property. This agreement was reduced to writing, and signed by all the parties to it, except Caroline Sneed. She was, however, an active participant in affecting the compromise and urged the settlement of the difficulties, law suit and all, upon the ground that they were disgraceful to the family. There was no agreement to dismiss the suit, and this was all that was said about it.
So far as we can see, the terms of the agreement were strictly and in good faith complied with, on the part of the contracting parties; and the question now is, what effect is to be given to an agreement and settle *541 ment, entered into by tbe married women, concerning their rights then in litigation..
They certainly had the power to receive the slaves in litigation, and, upon their delivery to either of the parties entitled to such delivery and possession, based upon the rights of all the parties, discharged the father from further liability as to them, and inured to the benefit of all the parties in interest.
This was a family settlement, concerning property and rights in litigation. Such settlements, when made without fraud, are favored by the law, and should be encouraged and upheld by the Courts, when it can be done without a clear violation of some established rule of law.
As a general rule, a married woman is incapable of contracting, or binding herself or her husband. There was a litigation pending between the father and the children, growing out of difference of opinion as to their rights under the Will. In consequence of the war, the Courts were suspended in some localities. The children, by force, took the property into their own possession, after which the compromise was entered into, which, the witness says, was intended as a final settlement of all matters in controversy between them — not only the slaves in controversy, but also all the household furniture which he had acquired by his wife; and, in accordance with this compromise, the father did deliver to his daughters, the furniture aforesaid, and the same was received by them; and, from all we can see in this record, the same remains in their posses *542 sion up to this time. Indeed, it is not pretended that such is not the fact. There is no pretense, in this record that either of the parties to that settlement have ever returned, or offered to return, to the father, any portion of the property received by them under the compromise, or that either the femes covert, or their husbands, or Caroline Sneed, have ever in any manner, disaffirmed it, unless we take the continued prosecution of this suit as an act of disaf-firmance. That, of itself, is not sufficient. Covert-ure, like infancy, cannot, at the same time, be used in the capacity of both a shield and a sword. A feme covert may be guilty of a fraud, in consequence of which she would be repelled from the Courts. In this case the slaves were claimed in right of the femes covert, who, without fraud, advantage, or undue influence, after due deliberation, under the advice of counsel, and apparently with a full understanding of all their rights, and a correct appreciation of the perils of the law suit in which they were engaged, voluntarily entered into this compromise with their father, for the purpose of settling a family controversy, which, at least one of them felt, was disgraceful to the family. They have received, according to its terms, the benefit of that compromise.
We are of opinion that courts of equity, at least, should be slow to disturb the sanctity and validity of such contracts, made under such circumstances; and, in this case, we are constrained to hold, that the husbands, having failed in any manner to disaffirm the *543 contracts entered into by their wives, have affirmed the same, and it has thereby become binding upon all the parties thereto.
Complainants, Lamb and wife, neither of whom were parties to the compromise, are entitled, under this bill, to an account for the hire' of the slaves, from the death of bfancy C. Sneed, until possession thereof was surrendered to Mrs. Paty and others, in 1863, with interest; also, to an account for the excess which came into the hands of the husband, John J. Sneed, under said clause in the Will of Abraham Overall, over and above the prices paid for said slaves, with interest; and are entitled to a decree against John J. Sneed for one distributive share of the same.
By their bill they have elected to take the property purchased with the fund to which they were entitled, after the death of their mother, in lieu of the fund. This they had a clear right to do, and the bill is drawn alone with this view, except as to the excess above mentioned; and notwithstanding the slaves, to recover which this suit was brought, have been emancipated and have ceased to be property, under the pleadings in this cause, the complainants are not entitled to abandon their election, and ask a decree for the fund with which the slaves were purchased. Paty and wife, Wood and wife, Botts and wife, Williams and wife, and Caroline Sneed, are bound by the compromise, and are, therefore, not entitled to any decree.
As Thos. J. Sneed, Sr., is only before the Court as a defendant, and not actively seeking the aid of the Court, and inasmuch as it does not clearly appear *544 whether he was a party to the compromise or not, or whether he is entitled to recover anything, no decree will be pronounced for him in this case; but the decree in this cause will not be held as an adjudication of his rights in any other suit he may hereafter bring.
We are of the opinion, upon the case as presented by this record, that the grand-children of Mrs. Sneed are not entitled to recover, and that the interest of their ancestors, as “children” of Mrs. Sneed, in the fund, passed to the personal representatives of the children who had died; but, as they are defendants, no decree will be pronounced in this cause to their prejudice in any other suit.
A decree will be entered in conformity with this opinion, and the cause remanded, for the purpose of taking the accounts as directed.